Good morning, Your Honor. May it please the court. Good morning, Ms. Nahas. Your Honor, this case has come before the court on the issue of what is a crime involving moral turpitude. That question is as big as the meaning of life. And it seems like, at least for the last 27 years that I've been practicing, that's one question we ask, that's one question judges ask, and we continue to struggle with it. You wish there were a perfect answer, believe me. I know, Your Honor, and I wish there was a perfect answer to the meaning of life, but I think we're just going to continue until we find bits and pieces. But what's important about this case is that, at least when it came to burglary, we had a definition. For 63 years, the BIA made it very clear we had to have two elements. So it was very easy to advise clients, to look at convictions, and it was very simple. You had to have a That crime itself had to be a CIMT. For 63 years. And then, about 11 years ago, after long-standing holding by the BIA, which all the circuits had applied, including our circuit, in 2005, following matter of M, which was that 63-year-old case. About 11 years ago, the Lussant case came around, and the BIA made a drastic change from the definition of a burglary. It no longer mattered what the intended crime was. That wasn't really the issue. The issue was whether or not the dwelling was occupied. So this is the first time that this court has had a chance to look at Lussant. And then, of course, with our case, which was the published decision, the BIA went even further. And I'm going to stop here. And when I say further, it wasn't a matter of explaining. It wasn't a matter of, let's elaborate. Let's illuminate the definition of burglary. They outright changed it. Dramatically changed it. In order for them to do that, they have to have good reason. And under Chevron, for that to happen, for the court to say, yes, what they did was legal, to give them deference, they have to have a good reason. But they went so far from matter of M, not only with Lussant, but also with the case that's before the court. And looking at their reasoning in terms of our case, they went as far as saying that if the dwelling is occupied, even minimally, intermittently, that qualifies for the dwelling element or prong of Lussant, which was not a requirement under matter of M. Again, matter of M, building and the intended crime. So after we filed a petition and we briefed the issues, this court came out with a published decision that actually touched upon. Now, that case that I provided to the court by way of a 28-J letter dealt with an Oregon robbery case. And the court might wonder why I provided that to the court. Well, it's important because I'm asking the court to evaluate, not only look at Lussant, but look at this case before the court. But if this court looks at matter of M and looks at my client's convictions, the two convictions, they will see that even if we were to apply matter of M, the second prong, which has to do with whether or not the intended crime was a crime involving moral turpitude, just doesn't rise to that level because of the date of my client's burglary conviction that involved theft. Because in Oregon, theft could be temporary. It could be a temporary taking. And even the board agreed that at least up until 2016, all thefts coming out of Oregon, and then this court upheld that, that theft cannot be a CIMT. It cannot be that predicate offense as it was in a matter of M. And then there was discussion about assault in Oregon. And in the same breath, the court determined that the framework when it came to definition of assault just doesn't rise to that level. So when you look at our case under matter of M, and I encouraged the court and asked the court to do so, we will see that my client was not convicted of burglary as a CIMT because the crimes he committed were not CIMTs. Therefore, burglary cannot be a CIMT. The government may argue and certainly the BIA in their decision that ARA, it's very telling. And this is kind of what BIA has done. When they don't like precedent decision by circuit court, they just say, well, you know, we're not going to follow it. And, or our hands are not tied by it. And we can go beyond it. So they, they said here, that they don't view this them from refining their holding. This wasn't a refinement of a holding. When you take out an entire analysis, or if you want second prong of an evaluation, what is a CIMT when it comes to a burglary? That's not a refinement. That's outright overruling matter of M, which they did by Lucent. Those two aren't irreconcilable, are they? You could have, you could say that for general burglary, including non-dwellings, it's the crime you intend to commit when you enter that matters. But also say, but if the burglary you have to commit is of a dwelling, then there are with dwellings separate concerns associated that aren't present with non-dwellings. And so you'd have sort of side-by-side principles instead of, as you say, irreconcilable principles. Well, they, they can't, they can't be side-by-side when matter of M for 63 years was, was allowed. It didn't matter whether it was the dwelling was occupied or not. What mattered really what was the intended crime once that person was in the building, whether occupied or not. So when you have that rule, it's clear, it gives notice as to what these convictions will be classified as. But once you come in and say that, well, now we're going to remove the intended purpose. And if it's a dwelling, however, intermittent, I mean, it could be three days of vacation rental. And in terms of clarity, in terms of clarity, if you, if you want to say, well, you, you know, you're in trouble if you burglarize a dwelling. Why isn't that clear? Well, they, they, they did that in Luzon, but in, in our case, they went even further. It seems, it seems as though that our case even overruled Luzon instead of elaborate or illuminate. Well, clarify in a sense. Judge Mosman, if you go to the fourth circuit in Uribe versus Sessions, there, they basically said what he just articulated. You go into a dwelling with any intent, then you have committed this specific crime. And that's because a dwelling is different than other buildings. And there are expectations of privacy and security in a dwelling. So the Oregon statute at least gives you fair warning that it doesn't matter if it's occupied at that very moment. So I, how do you, how would you have us distinguish the Uribe case? Would we be creating a circuit split if we were to go your way? I think you would be creating a circuit split. I think matter of M was very clear, and you would have to overrule a circuit precedent if the court were to decide that. The Cuevas-Gaspar case is very clear, and that is the law of this circuit, Your Honor. And for the ninth circuit, for the BIA to come in, one, they can't overrule Gaspar. Two, they claim that they're coming in to elaborate or illuminate on Gaspar. I don't see how that decision is doing that other than flat out saying that we intend to, one, they're not following the circuit law rule here within the ninth circuit. And the way they come out saying that is not direct. They are not coming out and saying we're not going to follow it. They're coming and saying that Gaspar doesn't prevent us from coming in and taking this major element out of the analysis of whether or not something is a burglary and a crime involving moral turpitude. They did that in Luzon. If we get as far as what you've argued, well, if we get past that, I should say, and right to the Chevron question, then what's unreasonable, arbitrary, or irrational about defining Oregon's burglary statute as it relates to dwellings as a CIMT under Chevron? Because I think when you compare that to the generic definition of burglary, you're going beyond what even the generic definition of burglary is under the Taylor analysis, Your Honor. If the court is aware or familiar with the case that, let me just find this. In Esquivel-Quintana v. Sessions, the VIA also dramatically changed, as they say, illuminated the definition of an aggravated felony involving a sexual abuse of a minor. And the Supreme Court simply said, no, it doesn't match the federal definition. So they struck it down. I know we don't have a clear definition of a CIMT, but there is some definition of a burglary, the standard generic definition of a burglary. So if we come in and get beyond that, so now we're making that definition even broader. Is there a standard definition of dwelling? Well, if we were to discuss the definition of dwelling in so far as Oregon is concerned, there is a case that's cited that involves intermittent occupation. So if it's occupied even intermittently, and then the definition they had given was that this place was vacant for weeks, I think for 40 some odd weeks and had some occupation, and they defined that as dwelling. The other issue we come into- But no, is there a generic federal definition of dwelling? I have not been able to find a generic definition of dwelling. What I have is, and I'm just going to read it, is the contemporary generic definition is an unlawful or unprivileged entry into or remaining in a building or other structure with intent to commit a crime. And that's out of Taylor v. U.S., U.S. Supreme Court out of 1991. The other issue we have is that you also have dwellings that are both commercial and residential. Where Matter M made it clear, it really didn't matter. As long as it was a building, what mattered was the intended crime. For example, in many areas, in metropolitan areas in the United States, including Portland, and I wonder in Seattle or San Francisco, you have these quasi living loft slash commercial buildings that fall under- Isn't the Chevron question more fundamental than that? That when you try to define CIMT, what the agency has done here is say, we'll take Oregon's burglary statute as divisible to the point of involving dwellings. That's a crime of moral turpitude. So what is, again, what is irrational about that decision? I know you say that they shouldn't have done that with Oregon's statute. But if we get to the point of asking if that agency decision is unreasonable, what makes that decision unreasonable? I think we would have to tie that into a retroactivity argument, Your Honor. Whether or not, and let me explain. It becomes unreasonable when it reaches conduct that occurred years ago, Your Honor. If it's perspective, I suppose we could, I would say that if it's a perspective application of a new rule or a new definition of a CIMT, I suppose that would be reasonable. But that's not what happened here. One, the definition has been dramatically changed, not just illuminated or explained. Two, it reaches conduct that goes back to 1999 and 2002, Your Honor. Especially in this case, that's before. You want to save your remaining time? Yes, Your Honor. Thank you. Oh, I need to hold. Okay. Good morning, Your Honors. May it please the court, Rebecca Nahas for the United States Attorney General. I want to start by clarifying that the board's decision in this case and in matter of Lausanne does not represent a change in the law from matter of M. Matter of M did not decide the precise question before the court of whether burglary of a dwelling is the crime involving moral turpitude. The statute before the board in matter of M was burglary of a non-dwelling. And the board pointed that out in its decision. It stated that the third degree New York burglary statute before it was unique in that it did not require that the burglary be of a dwelling. And the board went on to say that in resolving the issue of whether third degree burglary is CIMT, we have no occasion and do not now determine whether first or second degree burglary as defined in New York, which would be of a dwelling constitutes a CIMT. So the board in matter of M expressly stated it was not reaching whether burglary of a dwelling is a CIMT. That is a separate category of crime than burglary of a non-dwelling. And therefore, the rule in matter of M simply doesn't apply to this category of crime. And the board was free to define that category of crime in the crime and moral turpitude context. And I also want to point that point out that the fourth circuit in Aruba, as Judge McQuinn pointed out, did not find any change in the law. It applied the analysis in matter of Lausanne, which the board's decision in this case simply refined or clarified and found no incongruity between the board's decision in Lausanne and matter of M. And I'll also point out that the court in Hernandez-Cruz in 2011 suggested as well that burglary of a residential building could constitute a crime involving moral turpitude. And so there's even precedent in this circuit that this burglary of a dwelling is seen as a distinct crime and has a different analysis for the crime involving moral turpitude purposes. I also want to address the suggestion that there's been a change in the law between the board's published decision in this case and matter of Lausanne. Matter of Lausanne held that burglary of an occupied dwelling, because that was the Florida statute before it constituted a crime involving moral turpitude. The Florida statute did require that the occupant be present at the time of the burglary. But matter of Lausanne's reasoning and justification for finding that crime morally turpitude did not turn on the fact that the occupant had to be present at the time of the burglary. The reasoning and justification was that the burglary of a dwelling violates a justifiable expectation of privacy and security of the homeowner and also creates a risk of violent confrontation between the offender and a third party. That same justification and reasoning applies in the context of burglary of an intermittently or regularly occupied dwelling. So matter of JGDF, the board decision before this court, is merely a refinement or clarification of matter of Lausanne. And I also want to respond to petitioners' claim that the Ninth Circuit in Cuevas-Gaspar already decided the question of whether burglary of a dwelling is a CIMT. It didn't. Admittedly, the statute before the court in Cuevas-Gaspar did involve residential burglary, but the court applied the rule in matter of M, which did not address burglary of a dwelling. The court in Cuevas-Gaspar was not reviewing the reasoning that the board has subsequently provided for why burglary of a dwelling specifically would be morally turpitudinous. So Cuevas-Gaspar does not preclude the board's decision in this case. And, of course, the board has authority to define the ambiguous term in the INA, Crime Involving Moral Turpitude, and it did just that. It exercised its discretion and authority in defining the term. And it was not bound by Cuevas-Gaspar, as petitioners' counsel suggests. And the idea that the Ninth Circuit has already decided this question is also refuted by Hernandez-Cruz, which I mentioned in 2011, suggested that residential burglary would be a crime involving moral turpitude. I also want to address the reasonableness of matter of JGDF. The court should find a court-chevron deference to the board's published decision in this case because it reasonably found that burglary of an intermittently or regularly occupied dwelling is a crime involving moral turpitude, whereas I mentioned that involves an invasion of a justifiable expectation of privacy and security of one's home and invites a violent confrontation. It's true, isn't it, that for the agency's interpretation to be reasonable under chevron, they'd have to be defining a term that's not unconstitutionally vague. I mean, I guess by definition, you can't reasonably define a totally vague term. So what is your argument that this is not unconstitutionally vague, that you're just throwing darts at a wall to define it? Well, Your Honor, that issue is precluded by the court's precedent. This court has found repeatedly and recently that the Supreme Court's decision in Jordan DeGeorge already precluded the claim that crime involving moral turpitude is a vague, unconstitutionally vague term. And the court recently found itself bound by Jordan, even in the context of non-fraudulent crimes like the one before the court today. So that issue is not live. It's precluded by binding precedent. What do you make of your opponent's argument that all those cases, or at least most of the ones we'd consider, are fraud cases? Well, Your Honor, as I mentioned, the two cases I cited in my 28-J, Silva and I forget the name of the second one, but they're both in my 28-J. Those both involved non-fraudulent crimes. One was related to a sex crime against a child, and the other one was related to theft. And the court found that it was bound by Jordan, nonetheless, despite the fact that it was a non-fraudulent crime. So the government's position is that the constitutionality of the term crime involving moral turpitude has already been decided by the Supreme Court. And I also wanted to clarify a point that Petitioner made that... Now, Kelsey, can I ask you a question? If we agree with your interpretation of the CMAT that the board properly held that it was a CMAT, is your belief that we have no jurisdiction to reach any other issue? Yes. So the criminal alien bar would apply. And there is an update to the government's position on jurisdiction. So at the time of briefing, the Ninth Circuit precedent held that the criminal alien bar wouldn't apply to applications to bar judicial review of applications for relief that were denied on the merits rather than on the basis of the criminal conviction. And that was true for asylum, withholding, and CAT. But then the Supreme Court recently in Nasarala held that the criminal alien review bar does not apply to CAT protection because that bar only applies to the removal order, and CAT protection falls outside of the removal order. And so our position, the government's position, and I'm happy to provide more information in 28J, is that Nasarala implicitly overruled Ninth Circuit precedent stating that the criminal alien bar would preclude review of applications denied on the merits rather than based on the conviction because it's inconsistent with the Supreme Court's reasoning in Nasarala. That really what matters is, is that application part of the removal order, not whether it was denied on the merits rather than a conviction. So our position- I would read that 28J letter if, you know, so- I will supply that updated position on jurisdiction. So our position would be that the court lacks jurisdiction over asylum and withholding of removal, but not CAT protection under Nasarala. Got it. Um, I also just wanted to clarify that the, um, I don't see a timer on my screen, so- Oh, I'm sorry, um, the timer, you have about five minutes left. Okay, if you can let me know if I go over, Your Honor. Um, I just wanted to clarify that the definition of generic burglary under Taylor does not apply to this case. I think there's been a little bit of confusion on that in the briefing. That definition, of course, only applies in the context of aggravated felony provision or sentencing enhancement. The board defines crime involving moral turpitude depending on the category of crime before it, and here the category is burglary of a dwelling, and so it creates its own distinct definition, and generic burglaries definition and elements simply don't, aren't material to this case. Um. So even if the CMT is burglary, we don't look to the generic definition of burglary, is your position? Correct, yes. So the generic definition of burglary under Taylor applies to a different immigration provision. It applies to the aggravated felony provision, and the generic definition for crime involving moral turpitude is the one before the court, which is burglary of an intermittently or occupied dwelling. I see. So it's two separate generic definitions, and so whether the structure is a boat or a vehicle, that matters for generic burglary, which isn't the removability ground before the court, but it doesn't matter for crime involving moral turpitude. Um, I also wanted to just address that Oregon does put, does require that the building be a dwelling, and dwelling is defined as intermittently or regularly occupied by a person at night, and the case law does put boundaries on intermittently or regularly occupied. So, for example, the, a place that's vacant for 44 weeks of the year wouldn't, was found not to be a dwelling, and the, and the sort of the thread, um, that the, that the Oregon courts have applied in making that analysis is whether there's a likelihood of terrorizing the occupant. So that's really sort of the, the analysis. So there are boundaries. It's not just any, any structure. It has to be one that has a quality of a residence, which is why it's morally turpitude in this. Unless your honors have any other questions, um, the government requests that the court find matter of JGDAF reasonable and deny the petition for review. Thank you, your honors. Thank you. Mr. Shambla, I don't know if you have a clock on yours. You have just 23 seconds left, but we'll, we'll, uh, have Ms. Brebner put a minute for rebuttal. Do you, do you have a clock on your screen? I do. And I, um, just, I would like the court to consider, um, if this case had come before the court, uh, before Loussant, the court would be looking at, um, one, whether or not there was a building involved. And they would look at the intent for the crime that was committed in making that analysis. And that's what I'm asking the court to do, um, in this case. And I asked that, uh, Loussant and the case before the court not be upheld. In this case, we sent back to the board to either first decide the issue under a matter of M. And if the court's not willing to do that, then, uh, the Gaspar case, I think hold is the correct holding in this case. And I think this court is bound by that decision. And I, and I asked the court that the case sent the case, this case back to the board with instruction to send it to the IJ for the adjudication of the cancellation of, um, of removal application for a non-LPR that the petitioner had filed. I have nothing further, Your Honor. Thank you. Thank both counsel for your arguments this morning. The case just argued of Diaz-Flores is, uh, versus Barr is submitted. We have two cases submitted on the briefs, Bursell versus Saul and Owen versus Saul. And with that, we're adjourned for the morning. Thank you, Your Honor. Thank you. Ms. Neves. This court for this session stands adjourned.
judges: McKeown, Bumatay, Mosman